UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JENNIFER J. SHELDON,

                Plaintiff,               CIVIL ACTION NO. 18-cv-12564

        v.                         DISTRICT JUDGE DAVID M. LAWSON

COMMISSIONER OF              MAGISTRATE JUDGE MONA K. MAJZOUB
SOCIAL SECURITY,

                Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff Jennifer J. Sheldon seeks judicial review of Defendant Commissioner of Social Security's determination that she is not entitled to social security benefits for her physical and mental impairments under 42 U.S.C. § 405(g).  (Docket no. 1.)  Before the Court are Plaintiff's Motion for Sentence Four Remand (docket no. 14) and Defendant's Motion for Summary Judgment (docket no. 15).  Plaintiff has also filed a Reply to Defendant's Motion for Summary Judgment.  (Docket no. 17.)  The motions have been referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  (Docket no. 3.)  The undersigned has reviewed the pleadings, dispenses with a hearing pursuant to Eastern District of Michigan Local Rule 7.1(f)(2), and issues this Report and Recommendation.

## I.  RECOMMENDATION

For the reasons that follow, it is recommended that Plaintiff's Motion for Sentence Four Remand (docket no. 14) be **GRANTED IN PART** and **DENIED IN PART** and Defendant's Motion for Summary Judgment (docket no. 15) be **GRANTED IN PART** and **DENIED IN**

**PART**.  It is further recommended that this matter be remanded for consideration of the effect of Plaintiff's hospitalizations and nursing home care on her ability to perform sustained work activities on a regular and continuing basis.

## II.    PROCEDURAL HISTORY

Plaintiff protectively filed an application for a period of disability and disability insurance benefits on May 6, 2016, alleging that she has been disabled since December 1, 2015, due to borderline personality disorder, anxiety, depression, degeneration of the discs in her back, degeneration of her knee joints, gastroesophageal reflux disease (GERD), migraine headaches, a pacemaker, heart disease, and fibromyalgia.  (TR 12, 213, 308-09, 338.)  The Social Security Administration denied Plaintiff's claims on October 31, 2016, and Plaintiff requested a *de novo* hearing before an Administrative Law Judge (ALJ).  (TR 194-213, 222-23, 229-30.)  On April 25, 2018, Plaintiff appeared with a representative and testified at a hearing before ALJ JoErin O'Leary.  (TR 108-55.)   The ALJ subsequently issued an unfavorable decision on May 21, 2018, and the Appeals Council declined to review the ALJ's decision.   (TR 1-6, 12-27.)   Plaintiff then commenced this action for judicial review, and the parties filed cross dispositive motions, which are currently before the Court.

## III.    HEARING TESTIMONY AND MEDICAL EVIDENCE

Plaintiff (docket no. 14 at 5-7) and the ALJ (TR 19-26) have set forth detailed, factual summaries of Plaintiff's medical record and the hearing testimony.  Defendant incorporates the ALJ's recitation of the facts into her brief.  (Docket no. 15 at 4.)  Having conducted an independent review of Plaintiff's medical record and the hearing transcript, the undersigned finds that there are no material inconsistencies between Plaintiff's and the ALJ's recitations of the record.  Therefore, in lieu of re-summarizing this information, the undersigned will incorporate the above-cited factual

recitations by reference and will also make references and citations to the record as necessary to address the parties' arguments throughout this Report and Recommendation.

## IV.    ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of December 1, 2015, and that Plaintiff suffered from the following severe impairments: history of heart defect and transient ischemic attack (TIA) with pacemaker implantation and arrhythmia, systemic lupus erythematosus (SLE), bilateral hip degenerative joint disease, migraines, fibromyalgia, obesity, bipolar disorder, personality disorder, anxiety disorder, and substance abuse disorder.  (TR 14-15.)  The ALJ also found that Plaintiff's infection with sepsis was not a severe impairment because it did not last for twelve continuous months.  (TR 15.)  Additionally, the ALJ determined that Plaintiff's impairments did not meet or medically equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (TR 15-18.)  The ALJ then found that Plaintiff had the following residual functional capacity (RFC):

> [C]laimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except she can never climb ladders, ropes, or scaffolds.  She can never kneel or crawl.  The claimant can occasionally climb ramps and stairs, balance, stoop, and crouch.  She can never be exposed to unprotected heights or dangerous moving mechanical parts.  She can tolerate occasional exposure to extreme cold, heat, dusts, odors, fumes, and pulmonary irritants.  The claimant can understand, remember, and carry out simple instructions.  She can make work-related decisions.  She can occasionally deal with supervisors, coworkers, and the general public.  The claimant can perform frequent, but not constant, handling and fingering.

(TR 18-25.)  Subsequently, in reliance on a vocational expert's (VE's) testimony, the ALJ determined that Plaintiff was capable of performing a significant number of jobs in the national economy.  (TR 26.)  Therefore, the ALJ found that Plaintiff was not disabled under the Social Security Act at any time from December 1, 2015, through the date of the decision.  (TR 13, 26-27.)

## V.      LAW AND ANALYSIS

### A.      Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions.  Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards.  *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997).  Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528.  It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility.  *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole.  *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983).  If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion.  *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts").  "But '[a]n ALJ's failure to follow agency rules and regulations denotes a lack of substantial evidence, even where the

conclusion of the ALJ may be justified based upon the record.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374 (6th Cir. 2013) (quoting *Cole v. Astrue,* 661 F.3d 931, 937 (6th Cir. 2011)).

### B.    Framework for Social Security Determinations

Plaintiff's Social Security disability determination was made in accordance with a five-step sequential analysis.  In the first four steps, Plaintiff was required to show that:

(1)    Plaintiff was not presently engaged in substantial gainful employment; and

(2)    Plaintiff suffered from a severe impairment; and

(3)    the impairment met or was medically equal to a "listed impairment;" or

(4)    Plaintiff did not have the residual functional capacity (RFC) to perform relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(f).  If Plaintiff's impairments prevented Plaintiff from doing past work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education, and past work experience to determine if Plaintiff could perform other work.  If not, Plaintiff would be deemed disabled.  *See id.* at § 404.1520(g).  The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391.  To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987).  This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'"  *Id.* (citations omitted).

### C.    Analysis

The Social Security Act authorizes "two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing a decision of the [Commissioner]

(a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the [Commissioner] (a sentence-six remand)."  *Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (citing 42 U.S.C. § 405(g)).  Under a sentence-four remand, the Court has the authority to "enter upon the pleadings and transcript of the record, a judgment affirming, denying, or reversing the decision of the [Commissioner], with or without remanding the cause for a hearing.  42 U.S.C. § 405(g). Where there is insufficient support for the ALJ's findings, "the appropriate remedy is reversal and a sentence-four remand for further consideration."  *Morgan v. Astrue*, 10-207, 2011 WL 2292305, at *8 (E.D. Ky. June 8, 2011) (citing *Faucher*, 17 F.3d at 174).

Plaintiff asserts that this case should be remanded pursuant to sentence four because (1) "[t]he Decision is silent on the evidence demonstrating [that Plaintiff] lacks the RFC to work on a regular and sustained basis under [Social Security Ruling (SSR)] 96-8p and SSR 96-9p;" and (2) the ALJ failed to provide good reasons for giving less weight to the Medical Source Statement completed by Plaintiff's primary care physician, Sally Jo Sperbeck, D.O.  (Docket no. 14 at 2, 8, 10-18.)

1.    *The ALJ's Consideration of the Effect of Plaintiff's Hospitalizations and Nursing Home Care on Plaintiff's Ability to Work*

Plaintiff argues that the ALJ erroneously failed to consider how Plaintiff's numerous days of hospitalizations and nursing home care affect her ability to work on a regular and sustained basis.  (Docket no. 14 at 10-15.)  According to a table that Plaintiff submitted in support of her Motion for Remand, Plaintiff spent 55 days in the hospital and 37 days in a nursing home during the alleged disability period for issues related to her medical impairments.  (*Id*. at 13.)  Therefore, Plaintiff asserts, had she been working during this 30-month period, she would have been absent from work a total of 92 days, or an average of three days per month.  (*Id*. at 11; docket no. 17 at

1.)  Plaintiff asserts that her 24 physical therapy appointments would also have interfered with her work schedule.  (*Id*. at 11-12.)  Plaintiff points out that at the administrative hearing, the VE testified that absenteeism occurring on an average of more than one day per month would be work preclusive, especially for unskilled work.  (*Id*. at 12 (citing TR 151).)  Plaintiff argues that the ALJ's failure to consider this issue constitutes reversible error and renders her final decision unsupported by substantial evidence.  (*Id*. at 14-15.)

In response, Defendant correctly asserts that the ALJ was plainly aware of Plaintiff's hospitalizations and discussed them throughout her decision.  (Docket no. 15 at 6 (citing TR 15, 19, 20-23).)  Defendant then points out that nearly all of the days spent by Plaintiff in the hospital and nursing home are attributable to two distinct problems – 31 days due to problems with Plaintiff's pacemaker and 50 days due to an episode of sepsis -  both of which resolved in less than twelve months.  (*Id*.)  Defendant argues that since the two problems do not satisfy the twelve-month durational requirement of a severe impairment, Plaintiff cannot rely on them to advance her case.  (*Id*. at 7 (citing *McWhorter v. Berryhill*, No. 2:17-CV-12062, 2018 WL 4417746, at *5 (E.D. Mich. July 23, 2018) (rejecting claimant's argument that "sheer number" of medical visits rendered her disabled, noting, *inter alia*, that visits "involved isolated incidents, not chronic conditions that would require ongoing treatment").)  Defendant argues that the remaining days of hospitalizations for symptoms related to Plaintiff's impairments average to less than one day per month, which is insufficient to establish disability.  (*Id*. at 9.)  Defendant further argues that Plaintiff's reliance on her scheduled doctor and physical therapy appointments to support the instant argument is unavailing because there is no indication that those appointments would interfere with a regular work schedule.  (*Id*. at 9-10.)

According to Social Security Ruling 96-8p, an ALJ assesses a claimant's residual functional capacity ("RFC"), or the claimant's ability to perform "sustained work-

> related physical and mental activities in a work setting on a regular and continuing basis," meaning "8 hours a day, for 5 days a week, or an equivalent work schedule." In making this determination, the Commissioner must take into consideration "[t]he effects of treatment, including limitations or restrictions imposed by the mechanics of treatment (e.g., frequency of treatment, duration, disruption to routine, side effects of medication)." Absenteeism due to the frequency of treatment is a relevant factor so long as the treatment is medically necessary and concerns the conditions on which the disability claim is founded.

*Griffin v. Comm'r of Soc. Sec.*, No. 2:15-cv-13715, 2017 WL 991006, at *2 (E.D. Mich. Mar. 15, 2017) (Battani, J.) (citations omitted). "Courts have recognized that an ALJ's failure to consider the effect of numerous hospitalizations on a claimant's ability to work constitutes reversible error." *Minke v. Comm'r of Soc. Sec.*, No. 15-12516, 2016 WL 4253968, at *6 (E.D. Mich. July 18, 2016), *report and recommendation adopted*, No. 2:15-cv-12516, 2016 WL 4205992 (E.D. Mich. Aug. 10, 2016) (collecting cases).

In *Minke v. Comm'r*, a case on which Plaintiff relies, the court addressed an argument similar to the durational-requirement argument advanced by Defendant in this case. 2016 WL 4253968, at *7. The *Minke* court rejected that argument, reasoning that the issue was not whether the durational requirement was met but whether, "considering the effects of all of [the claimant's] impairments – both 'severe' and 'non-severe' – the evidence establishe[d] that she retain[ed] the RFC to perform sustained work activities on a regular and continuing basis." *Id*. (citing SSR 96-8p, 1996 WL 374184, at *5-7 (July 2, 1996)) (footnote omitted). The court then held that where nearly all of the claimant's hospitalizations related in some way to her severe impairments, "the ALJ erred in failing to consider the effect of those frequent hospitalizations on her ability to perform work on a regular and continuing basis." *Id*.

As noted above, Defendant relies on *McWhorter v. Berryhill* to support her durational-requirement argument. 2018 WL 4417746, at *4-6. In *McWhorter*, the ALJ explicitly considered and analyzed the claimant's argument that her numerous emergency room visits and inpatient

hospital stays were work preclusive.  The ALJ rejected the claimant's argument because (1) the claimant's "representative did not relate any of the hospital visits to specifically medically determined impairments and functional limitations that would prevent [her] from performing work activity at the sedentary exertional level;" (2) many of the claimant's visits involved isolated incidents like toothaches, car accidents, and a urinary tract infection, not chronic conditions that required ongoing treatment; (3) some of the claimant's visits were triggered by non-compliance with medications; and (4) some of the attending physicians believed that the claimant was visiting the emergency room not to obtain medically necessary treatment but to improperly obtain narcotics.  The court held that the ALJ's reasoning was supported by substantial evidence and upheld the decision.

The circumstances in this case are analogous to those in *Minke* and distinguishable from *McWhorter*.  Here, the ALJ's decision is devoid of any discussion regarding the effect of Plaintiff's numerous hospitalizations and nursing home care on her absenteeism and her ability to perform substantial gainful activity.  Yet Plaintiff has demonstrated that the majority of her hospitalizations were related to her severe impairments, namely, her history of heart defect and TIA with pacemaker implantation and arrhythmia, bilateral hip degenerative joint disease, migraines, bipolar disorder, and anxiety disorder.  (*Compare* TR 15 *with* docket no. 14 at 13.)  And while 50 days of Plaintiff's hospitalizations and nursing home care relate to Plaintiff's infection with sepsis, which the ALJ deemed to be a non-severe impairment because it did not satisfy the durational requirement, the ALJ is required to consider the effects of Plaintiff's severe *and non-severe* impairments in determining Plaintiff's RFC to perform sustained work activities on a regular and continuing basis.  *Minke*, 2016 WL 4253968, at *7 (citing SSR 96-8p, 1996 WL 374184, at *5-7) (emphasis added).  Thus, as in *Minke*, the ALJ's failure to consider the effect of Plaintiff's

hospitalizations and nursing home care on her ability to work constitutes reversible error, and remand for further consideration is warranted.

### 2.    *The ALJ's Assessment of Dr. Sperbeck's Opinion*

Plaintiff argues that the ALJ's decision is not supported by substantial evidence because the ALJ failed to provide good reasons for discrediting Dr. Sperbeck's opinion.  (Docket no. 14 at 15-18.)  It is well settled that the opinions of treating physicians are generally accorded substantial deference.  In fact, the ALJ must give a treating physician's opinion complete deference if it is supported by clinical and laboratory diagnostic evidence and it is not inconsistent with the other substantial evidence in the record.  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  When an ALJ determines that a treating source's medical opinion is not controlling, he must determine how much weight to assign that opinion in light of several factors: (1) length of the treatment relationship and the frequency of examination; (2) nature and extent of the treatment relationship; (3) supportability of the opinion; (4) consistency of the opinion with the record as a whole; (5) specialization of the treating source; and (6) other factors.  20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6).

There is no *per se* rule that requires an articulation of each of the six regulatory factors listed in 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6).  *Norris v. Comm'r of Soc. Sec.*, No. 11-CV-11974, 2012 WL 3584664, at *5 (E.D. Mich. Aug. 20, 2012) (citing *Tilley v. Comm'r of Soc. Sec.*, 394 F. App'x 216, 222 (6th Cir. 2010)).  An ALJ's failure to discuss the requisite factors may constitute harmless error (1) if "a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it;" (2) "if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion;" or (3) "where the Commissioner has met the goal of [§ 1527(c)]—the provision of the procedural safeguard of reasons—even though she has not complied with the terms of the regulation."  *Nelson v. Comm'r of Soc. Sec.*,

195 F. App'x 462, 470 (6th Cir. 2006) (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004)).

The Commissioner requires its ALJs to "always give good reasons in [their] notice of determination or decision for the weight [they] give [a] treating source's opinion." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Those good reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Wilson*, 378 F.3d at 544 (quoting Social Security Ruling (SSR) 96-2p, 1996 WL 374188, at *5 (1996)). The district court should not hesitate to remand when the Commissioner has failed to identify the weight assigned to a treating physician's opinion and provide good reasons for that weight. *See Cole v. Astrue*, 661 F.3d 931, 939 (6th Cir. 2011) ("This Court has made clear that '[w]e do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician's opinion and we will continue remanding when we encounter opinions from ALJ's that do not comprehensively set forth the reasons for the weight assigned to a treating physician's opinion.") (citing *Hensley v. Astrue*, 573 F.3d 263, 267 (6th Cir. 2009)).

Dr. Sperbeck completed a Medical Source Statement regarding Plaintiff's impairments on April 15, 2018. (TR 1815-16.) The ALJ summarized and assessed Dr. Sperbeck's opinion as follows:

> Treating source Sally Jo Sperbeck, D.O., provided a medical source statement dated April 15, 2018. Dr. Sperbeck stated the claimant's diagnoses were back pain, fibromyalgia, migraine with aura, SLE, history of TIA, peripheral neuropathy, and pacemaker. She noted the claimant experiences widespread muscle pain. Dr. Sperbeck reported the claimant had headaches three to four times per week with sensitivity to noise and light. The doctor opined with [sic] claimant would sometimes need to lie down at unpredictable intervals during an eight-hour workday. She noted these findings and limitations had been present since at least December 1, 2015. (Ex. B36F). This opinion is not consistent with the claimant's treatment history or physical examination findings, which indicated some

tenderness to palpation, decreased sensation, generally intact strength, full range of motion except for the left hip, intact deep tendon reflexes, intact coordination, and antalgic gait with no assistive device. It is also not consistent with the recommendations of the consulting neurologist, who recommended only extremely conservative treatment including ice, physical therapy, and elbow pads. I give less weight to this opinion.

(TR 24.)

Plaintiff argues that the ALJ's "two-sentence unsupported analysis" fails to address the regulatory factors and that while there is no requirement that the ALJ articulate all of the factors, the assessment is otherwise conclusory in nature and fails to provide any specific citation to the record that would allow any subsequent reviewer to trace the ALJ's path of reasoning. (Docket no. 14 at 16-18; docket no. 17 at 5.) But an ALJ's explanation must be viewed against the backdrop of her discussion of the treating records. *Fifer v. Comm'r of Soc. Sec.*, No. 14-14584, 2016 WL 1399254, at *2 (E.D. Mich. Apr. 11, 2016). And here, the ALJ devotes a significant paragraph of her decision to a discussion of Plaintiff's physical examination findings and the neurologist's recommendation, which paragraph includes several citations to the medical record. (TR 22.) The ALJ mentioned some of the physical examination findings in his assessment of Dr. Sperbeck's opinion, and the undersigned need not summarize the remainder of those findings here. Importantly, when the ALJ's assessment of Dr. Sperbeck's opinion is read in conjunction with the ALJ's discussion of Plaintiff's physical examinations, the ALJ's reasons for discounting Dr. Sperbeck's opinion are sufficiently specific to make clear to any subsequent reviewers the weight that the ALJ gave to Dr. Sperbeck's opinion, and they therefore constitute good reasons under the regulations. The ALJ has sufficiently complied with the procedural aspect of the treating physician rule. Accordingly, Plaintiff's Motion should be denied with regard to the ALJ's assessment of Dr. Sperbeck's opinion.

## VI.    CONCLUSION

For the reasons stated herein, the court should **GRANT IN PART** and **DENY IN PART** Plaintiff's Motion for Sentence Four Remand (docket no. 14), **GRANT IN PART** and **DENY IN PART** Defendant's Motion for Summary Judgment (docket no. 15), and remand this matter for consideration of the effect of Plaintiff's hospitalizations and nursing home care on her ability to perform sustained work activities on a regular and continuing basis.

## <u>REVIEW OF REPORT AND RECOMMENDATION</u>

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: July 30, 2019         <u>s/ Mona K. Majzoub</u>
                                    MONA K. MAJZOUB
                                    UNITED STATES MAGISTRATE JUDGE

## **PROOF OF SERVICE**

      I hereby certify that a copy of this Report and Recommendation was served upon counsel of record on this date.

Dated: July 30, 2019         <u>s/ Leanne Hosking</u>
                                    Case Manager